But if the judgment of the inferior court was for the delivery of a specific thing, & this object was delivered in consequence of the party not being able to give security on the appeal, the reversal of the judgment would enable the appellant to get back the property detained in satisfaction of it.

*BAILLIO & AL.* vs. *WILSON & AL.*

APPEAL from the court of the sixth district.

PORTER, J. delivered the opinion of the court. This action commenced in the court of probates, and on judgment being rendered there against the defendants, they appealed to the district court, where that of the probate court was reversed. From this judgment the plaintiffs have appealed.

The petitioners state, that in the year 1818 they sold and conveyed to one James H. Gordon, two tracts of land for the sum of $16000, with interest on the different instalments at the rate of ten per cent. per annum, that after executing the said act of sale, the said Gordon departed this life, leaving the said sum unpaid; that his widow, Maria C. Gordon, natural tutrix of the minor children and heirs of her husband, has taken possession of the estate, and is liable for the payment of the debt due the petitioners. That since the death of James H. Gordon, the petitioners have proceeded against the said Maria, and her husband, Wm. Wilson, with whom, since the death

of James H. Gordon, she has intermarried,

have obtained judgments and issued executions against them, and under the sales made in pursuance thereof have purchased the lands and hold them. That since the lands were sold, the defendants took an appeal and had these judgments reversed : that the lands still belong to the petitioners, but that there is a large balance yet due to them, and that the succession is solvent and able to pay them. That the funds are in the hands of the defendants, who are liable for the payment, and that tho' a long period has elapsed since the death of James H. Gordon, the said Maria, as tutrix to her minor children, who accepted the succession with the benefit of an inventory, has failed to render an account of her administration. The petition concludes by a prayer that the defendants may be cited and compelled to render a full and complete account of the administration of the said estate, and that they may be condemned to pay the amount due the petitioners, with interest and costs ; and further, that the validity of the sales made to them may be enquired into.

The defendants severed in their answers. Wm. Wilson pleaded the general issue, and denied the jurisdiction of the court.

His co-defendant also pleaded the general issue. She averred that she had renounced the community with her late husband; that, as tutrix to her children, she had administered on the estate; that she had caused a large part of the property to be sold at probate sale; that the lands which had been mortgaged to the present plaintiffs were offered for sale without success; that she was proceeding to cause other and further appraisements to enable her to pay the plaintiffs, but that they, not satisfied with these proceedings, instituted suit in the district court against the defendant and obtained judgments, which have been since reversed and annulled. That under these judgments the lands have been taken out of the possession of the defendant, as she was unable to give bond to stay the execution. That she has taken all legal means to procure restitution to the mass of the estate of the lands sold as aforesaid, so that she may proceed to a final administration. That she does not believe there will be property

West'n;Dis'et
October, 1826

BAILLIO & AL
vs.
WILSON & AL

sufficient to pay the debt due by the estate, but that she cannot ascertain how much the deficit will be until the lands purchased by the plaintiffs shall be sold. That she has made many payments to creditors. That she has been always willing to render an account, and still is so. That she hath done no act to render her liable in her private capacity, and that if she has, the court of probates has no jurisdiction of the demand, nor has it any to examine the validity of the sale of the lands; and finally, that no judgment can be given against her for a specific sum until the whole of the estate shall be sold.

The first questions to be examined arise out of the pleas presented to the jurisdiction of the court, and we think the defence well offered to that part of the petition which alleges the personal responsibility of the defendant, by reason of her mal-administration. Such action should be commenced in the district court.

But we do not think the court of probates is without jurisdiction to examine into the validity of the sales made under the judgment of another tribunal. It is true it wants

the power to decide directly on titles to land; but where the question arises collaterally, and an examination of it becomes necessary in order to enable the court to arrive at a correct conclusion, on matters of which it has jurisdiction, as in the case before us, where the object is to ascertain how much is due by the estate, then the court, of necessity, must examine whether the sales made entitle the defendants to a credit.

The defendant is equally ill founded in her objection, that no judgment can be rendered against her for a specific sum, until the whole of the estate shall have been sold. A creditor, whose debt is disputed by an administrator of an estate, either in whole or in part, has a right to demand that it shall be liquidated and ascertained by a judgment, altho' after that judgment be rendered he may not be authorised to issue execution on it. A contrary rule would delay the creditor, unnecessarily, by compelling him to liquidate his claim after funds had come into the hands of his administrator to pay him. He may do it before, and have his debt established, so that when

West'n Dis'ct
October, 1826.

BAILLIO & AL
vs
WILSON & AL

money is received by the representatives of his debtor, they must pay him without further delay.

The district court gave judgment against the defendant, as tutrix of the minor children of James H. Gordon, for $8666 66 2-3, and directed the mortgaged premises to be sold by the probate court, for 'cash, that the proceeds should be first applied to the payment of the plaintiffs' demand, and that if any balance should remain due, that they be paid in common with the other chirographary creditors.

Tho' this judgment does not expressly pass on the validity of the sales made under the judgments obtained in the district court, it impliedly considers them void and of no effect, and the correctness of this opinion is the principal question which the cause presents, and that which has been most discussed at the bar.

It is one of considerable importance, but not of much difficulty. The acts of the legislature provide that on all judgments rendered by the courts of justice of this state, executions may issue after a certain number of days, unless these judgments shall be stay-

HARVARD SCHOOL LIBRARY.

ed in their execution by an appeal. And they further provide, that no appeal shall stay execution unless the party cast shall give bond, with good and sufficient security, in a sum not exceeding double the value in dispute.  1 *Mart. Dig*, 438.

These acts also provide for the manner in which executions shall issue—their form and effects : and one of these effects is expressly stated to be " that a sale under them *shall vest in the purchaser all the right, title and interest which the defendant had in the thing sold."*  They make no distinction between executions, on judgments final, in a court of the last resort, and those emanating from a tribunal whose decrees are subject to revision and reversal ; all are declared to *vest* the title of the defendant, *absolutely*, without *condition* of any kind.  It is clear then that we have not the authority to say, that on any subsequent event that title shall be *divested*.  2 *Mart. dig*. 172.

The letter of the law being therefore directly opposed to the construction contended for by the appellees, it might be sufficient to leave the question on that ground alone, but as the contrary doctrine has been strenuously

West'n Dis'ct
October, 1826
BAILLIO & AL
vs.
WILSON, & AL

contended for, it may not be amiss to consider the subject in other points of view.

The legislature, in acting on this matter, had, as they have in most others, but a choice of inconveniences. On the one hand there was that of permitting debtors to waste their property, or put it out of the reach of their creditors, during the period that might elapse between giving judgment in the court of the first instance, and that of the appellate tribunal : on the other, that of exposing the defendant to the hardship of having his property sold at, perhaps, less than its real value, to satisfy a judgment which might be reversed. They chose the former as the least evil of the two, and we think wisely. The presumption is against the debtor and in favor of the judgment rendered against him, and he should not be permitted to delay its execution unless he can place the person, in whose favor it has been rendered, in as good a situation as he would have been, had the appeal not been taken.

If we suppose these to have been the motives why these laws were passed, and we can imagine no other, the principles contended for by the appellee would defeat the object

West'n Dis'et
*October.* 1826

BAILLIO & AL
*vs*
WILSON&AL

contemplated by the law maker. No one would purchase at a sheriff's sale, on the risk of having the property taken out of his hands, with an uncertain recourse on the creditor for the purchase money, who might be a non resident, or have become an insolvent in the interval between judgment below and above; or if he did, he would do it at such a hazard as would make the contract in effect more resemble an aleatory one than any thing else, and consequently the goods of the debtor would be always sold at a sacrifice, for the purchaser would seek indemnification for the danger to which he was exposed, in the profit which he might hope to make. Execution is quaintly, but truly, called the life of the law. The doctrine on which these sales are sought to be avoided, would make it any thing else, or if, in some cases, it would have that effect, it would be with great injury and loss to the defendant.

It was urged from the bar, that as the only authority for the execution was the judgment of the court, the reversal of that judgment necessarily rendered every thing which had been done under it, void. But the position we consider to be quite untenable. The des-

West'n. Dis'ct
October, 1826

BAILLIO & AL
vs.
WILSON & AL

truction of a power does not carry with it the destruction of the effects which that power, when in force, may have produced. This might be illustrated in a variety of ways, and by examples drawn from every science. But we will take one from that which we are most in the habit of studying and best acquainted with. If an agent should sell a tract of land under a power of attorney, a subsequent revocation of that power would surely not annull the sale that was made under it.

Again, if the legislature had contemplated that any such consequence was to result from the reversal of the judgment, we must presume they would not have neglected to make particular provisions in relation to it, in order to meet the exigencies of different cases. For even on the principles contended for by the appellees, it is not every reversal which should produce a rescision of the sale. The judgment may be only avoided in part, and confirmed for an amount greater than that made on the execution—it may be remanded, for some mistake in conducting the proceedings below, and ultimately confirmed to the whole extent of the first judgment. Cases, then, so entirely dissimilar from those where

BAILLIO & AL
*vs*
WILSON & AL

the decree of the court of the first instance is reversed in *toto*, would, we believe, have received, as they certainly required, different regulations, if it had been intended that a reversal of the judgment of the inferior court should annul the sale by the sheriff made under it.

There is still another consideration. It is now upwards of twenty years since these statutes have been passed. So far as our experience has extended, this is the first time that an attempt has been made to set aside sales made under judgments which were afterwards reversed; and yet the cases must have been numerous, where there were strong motives to do so. This long acquiescence under the construction which we now adopt, is a powerful argument to shew its correctness. It proves how these laws have been understood by the profession.

Leaving the question for a moment on that ground, let us now see what is done in other countries. The form of our writ of execution, as it is well known, comes from the common law. It is a well settled principle in that system, that on the reversal of the judgment of the inferior court, the plaintiff in error is

only restored to the money made under the *fieri facias* not to the thing sold. 2 *Tidd. Prac.* 1139, 2 *Bac. ab* 506 (Am. ed.) 8 *Co* 19 *Cro jac.* 246.

If indeed the property is only extended on an *elegit,* the defendant in execution gets it back, because there has been no alienation under the writ. And so it would be here if the judgment of the court below was for the delivery of a specific object, and that judgment should on appeal be annulled 2 *Bac. ab,* 507.

The Spanish law can afford us no guide for settling this question. In that country the adjudication of property under execution, was a *judicial act,* to which act purchaser, plaintiff and defendant were parties—from the judgment rendered thereon, the defendant might appeal, and the reversal of the sentence of adjudication left the buyer, of course, without title. The creditor was obliged in all cases, by virtue of the law *Toledana,* to give security for the return of the property. in case the sentence of *remate* should be reversed. *Cur. Phillip, p. 2, juicio executivo verbo citacion, ibid sentencia, §20, no.* 1 & 2, *ibid remate no.* 1. *Febrero, p. 2, lib. 3, cap. 2, §fin. no.* 386, 387.

We are, therefore, of opinion that the amount received on these executions, must be credited to the defendants, and the debt due to the plaintiffs being fully established, that they must have judgment for the balance due.

The district court, in giving judgment, left out of view the sum of 4333 dollars and 33 cents, on which the plaintiffs had obtained judgment in the district court, on the ground that as the amount was settled by a decree of that tribunal, it formed a distinct and separate claim, which ought to be presented to the court of probates as such.

But in this it erred. The object of this suit is to ascertain what sum is due to the plaintiffs on the whole transaction, so that the tutrix may pay them their proportion with the other creditors. All the claims then should be embraced.

The plaintiffs shew that at the death of James H Gordon, there was due to them $13,000, with ten per cent. interest. On that sum there has been made by execution, issuing on the judgments obtained on the last instalments, $7160; the plaintiffs then are entitled to judgment for five thousand eight hundred and forty dollars, with interest, to be

calculated by ascertaining the interest from the time the obligations became due until the day of partial payment, adding the interest to the principal, and deducting the payment. 1 *N. S.* 572. 3 *ibid* 487.

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed. And it is further ordered, adjudged and decreed, that the plaintiffs do recover of the defendant, Maria C. Wilson, tutrix, the sum of five thousand eight hundred and forty dollars, with interest as aforesaid, to be paid by the said Maria C. Wilson out of the estate of James H. Gordon, in her hands to be administered as tutrix to his minor heirs. And it is further ordered, adjudged and decreed that no execution shall issue on the judgment, until the said Maria C. Wilson shall have failed to render her account, according to law, in the court of probates; and to pay over to the plaintiffs such portion as may be due to them as chirographary creditors.

*Thomas & Baldwin* for the plaintiffs, *Rost & Wilson* for the defendants.